LUKE HOUGHTON *vs.* ADOLPHUS BARTHOLOMEW & another.

A deed of an equity of redemption, given by an officer to a purchaser thereof at a sale on execution, pursuant to the Rev. Sts. c. 73, § 38, gives to the purchaser all the execution debtor's right, title and interest in the premises, as against a subsequent purchaser or attaching creditor who has actual knowledge of the sale and conveyance by the officer, although such deed is not recorded within three months.

A. attached B.'s right in equity to redeem mortgaged land, and, while A.'s suit was pend

ing, the same right was attached in a suit brought in the name of W. for the benefit of C., whose estate and effects were all afterwards assigned to D. under the insolvent law: A. recovered judgment against B., and caused said right in equity to be seized on execution while his attachment was in force, and to be duly sold; and the officer made a deed thereof to E., the purchaser, which was not recorded within three months: C. afterwards recovered judgment against B., in the name of W., and exe cution issued thereon, upon which the same right in equity was sold to D., to whom the officer gave a deed thereof. *Held*, that E.'s title to the right in equity should prevail against the title of D., if C., before the second levy and sale, and before the appointment of D. as his assignee, had actual knowledge of the first levy, sale and deed, and also of the first attachment, or if D. had such knowledge after his appoint ment *as assignee of C., and before the second levy and sale.*

WRIT OF ENTRY to recover possession of a tract of land in Hardwick. The parties submitted the case to the court on the agreed statement of facts which follows :

" Both parties claim title to the demanded premises under Joseph Robinson. The demandant's title is as follows : On the 8th of June 1842, Daniel Bacon commenced a suit against said Robinson, and attached his right in equity to redeem said premises, which then were and still are subject to a mort-gage. At the March term of the court of common pleas, in 1843, said Bacon recovered judgment against said Robin-son, for the sum of $3935·94, damage, and $20·58, costs, and within thirty days therefrom levied his execution upon said right in equity, which was duly sold to David Paige, and a deed thereof executed to him by the officer who made the sale. This deed was acknowledged and delivered on the day of the sale, but was not recorded until the 12th of Feb-ruary 1844. Said Paige subsequently conveyed his interest in said premises to Aaron Brooks, jr. who conveyed the same to the demandant.

" Before the rendition of the aforesaid judgment, to wit, on the 28th of July 1842, John Paige, in the name of Wel-come Wadsworth, commenced a suit against said Robinson, and attached the same right in equity ; and this suit was pending in the court of common pleas at the time of the aforesaid sale to David Paige. At the June term of said court, in 1844, said Wadsworth recovered judgment against said Robinson, for the sum of $7908 _0 damage, and 41·06, costs, and levied his execution, within thirty days, on the

same right in equity, which was sold by an officer to the tenants, who were assignees of said John Paige, under the insolvent law of 1838; and the tenants, on the day of the sale, received a deed from the officer, duly acknowledged, and recorded within three months from the time of the sale.

" Bartholomew, one of the tenants, was present when said right in equity was struck off to Paige, and had knowledge of that fact, and that the said Brooks was the attorney of John Paige, in the commencement and management of said last mentioned suit, and had knowledge of the sale to David Paige, and the delivery of the deed to him, at the time they took place.

" Judgment to be entered for the demandant or for the tenants, as the opinion of the court may be."

*Barton & Bacon*, for the demandant. If John Paige or the tenants had notice of the officer's deed to David Paige, the second deed cannot prevail against the first. Brooks, John Paige's attorney, had notice, and that was notice to Paige. *Haven* v. *Snow*, 14 Pick. 32. *Jennings* v. *Moore*, 2 Vern. 609. *Astor* v. *Wells*, 4 Wheat. 466. *Gosling's case*, 3 Simons, 301. When the title is perfected, as between vendor and vendee, actual notice to a third person operates on him like the registration of the deed. Knowledge of an actual passing of the title is complete against every one with notice. Per Parker, C. J. 4 Pick. 257. See also *Wilson* v. *Mason*, 1 Cranch, 100. 1 Story on Eq. §§ 395 – 397. 2 ib. § 1264. As against Robinson, the demandant's title was perfected before the registry. The *St.* of 1798, c. 77, § 3, did not require that an officer's deed of an equity of redemption should be recorded. The Rev. Sts. c. 73, § 38, first provided for recording it. But the purpose of this provision is the same as those respecting the recording of other deeds, namely, to give notice to subsequent purchasers and attaching creditors, and is to be construed, as *St.* 1783, c. 37, § 4, and c. 57, § 2, were, that is, not to apply to such purchasers and creditors as have notice without the

record. *Farnsworth* v. *Childs*, 4 Mass. 637. *Priest* **v.**
*Rice*, 1 Pick. 164. *Curtis* v. *Mundy*, 3 Met. 405.

It will be said that, as the tenants attached the equity,
they will hold, if the demandant's grantor omitted any
thing ; and *McGregor* v. *Brown*, 5 Pick. 170, will be relied
on. But in that case, the subsequent attaching creditor had
notice only of the prior *attachment.* Besides ; the Rev. Sts.
*c.* 73, §§ 18, 38, have altered the law, so that a subsequent
attaching creditor must wait three months before he can
safely levy.

*C. Allen & Phelps,* (*W. A. Bryant* was with them,) for
the tenants. By the Rev. Sts. *c.* 73, § 38, the recording of
an officer's deed of an equity of redemption, is a condition
precedent to the purchaser's title. The deed, " *being recorded*
in the registry of deeds, within three months after the sale,
shall give to the purchaser all the right," &c. of the execu-
tion debtor. This language is as explicit as possible ; and
no construction should be made against the express letter of
a statute. *Edrich's case,* 5 Co. 118 *b.* See also *Doe* v. *All-*
*sop,* 5 Barn. & Ald. 146. *Doe* v. *Routledge,* Cowp. 712.

The cases cited for the demandant, as to notice without
registry, were under other statutes, and do not apply. There
is no decision on *St.* 1798, *c.* 77, § 3, nor on § 38 of *c.* 73 of
the Rev. Sts. In the Rev. Sts. *c.* 59, § 28, it is provided that
actual notice of conveyances of estates in fee, &c. shall be
equivalent to registry. And in *c.* 73, § 18, it is provided that
notice of a levy by appraisement shall have the same effect
as a record of such levy. But no such provision is made in
§ 38, in case of an officer's deed of a right in equity. The
omission was intentional, and the legislature must have
intended to make a difference in the cases in the different
sections. See *The King* v. *Inhabitants of Stoke Damerel,*
7 Barn. & Cres. 569. *Moser* v. *Newman,* 6 Bing. 561, per
Park, J. *The King* v. *Skone,* 6 East, 518. 2 Dwarris on
Sts. 707. The deed of an equity is given to the purchaser,
who may record it as soon as he pleases ; but a levy by ap-
praisement is to be recorded by the officer. This accounts

for the difference in the law in the two cases, viz. that a levy shall be good for the creditor, though the officer may not perform his whole duty, but that a deed of an equity shall not avail the purchaser who omits his duty.

One year only is allowed for the redemption of an equity, (Rev. Sts. c. 73, § 42,) and if the deed is not recorded, how is the debtor to know who is the purchaser? He might, indeed, go to the clerk's office, and see the return on the execution; but the execution may be in the clerk's office at Nantucket, though the land may be in Berkshire. In the present instance, there was nearly a year's delay to record the deed; so that the tenants might well suppose that the attachment was abandoned, or that Robinson had redeemed the land.

The Rev. Sts. c. 90, § 28, require notice of an attachment of real estate to be deposited in the clerk's office within three days. But would the court decide that a subsequent attaching creditor or purchaser should not hold the land because he knew that an attachment had been made, though not notified in the clerk's office?

Attaching creditors have a right to take advantage of the defects in each other's proceedings · and the doctrine of notice does not apply. *McGregor* v. *Brown*, 5 Pick. 174.

DEWEY, J. The tenants insist that the demandant has failed to acquire a legal title in the demanded premises, by reason of his omission to record the officer's deed to him within three months after the sale of the equity of redemption.

If this was a mere question of the proper construction of Rev. Sts. c. 73, § 38, taken as an isolated provision, it might be freely admitted that the reading of the section, urged upon us by the tenants, would be the more literal and obvious one. But we are not at liberty thus to consider the provisions of this section, which is only a part of a system, one among numerous provisions in relation to the recording of deeds and other muniments of title to real estate, and all of which combined make up our registry law.

The question before us is really none other than a question

upon our system of registration of title deeds, and, in deciding it, we must regard the course of decisions upon other portions of the registry law. These decisions have a very strong bearing upon the immediate question before us, as they were made in reference to statute provisions quite as direct and positive in their language as the section now under consideration.

The *St.* of 1783, *c.* 37, § 4, upon which the cases have more usually arisen, was direct and explicit, that deeds not recorded should only avail as against the grantor and his heirs. But it was early settled by judicial decisions, that this enactment was made only to secure *bona fide* purchasers, who should have acquired title by a subsequent deed without knowledge of the previous conveyance; that the object of the statute was effected where this knowledge was acquired through other sources than the registry; and that, where such knowledge was established by evidence, the want of registry was no objection to giving effect to the deed. The doctrine was, to quote the language of Parker, C. J. in the case of *Priest* v. *Rice*, 1 Pick. 168, that "actual notice proved is, to the person affected by it, as useful, and ought to be attended with the same consequences, as public notice in the registry." The principle has, through numerous decisions, which I forbear to cite, come to be well settled as to the general statute provision requiring deeds to be recorded, that if the second grantee has notice, at the time of the taking his deed, of a prior unregistered deed, it is the same to him as if such deed had been recorded.

A distinction was at one period suggested, and attempted to be maintained, between the cases of attaching creditors, and those claiming under a deed, and it was insisted that the former were not affected by notice of the existence of an unrecorded deed; but this attempted distinction has been declared not to be sound, and is indeed wholly repudiated by this court. *Priest* v. *Rice*, 1 Pick. 164. *Curtis* v. *Mundy*, 3 Met. 405. Upon the question raised in the case before us, we have a strong analogous case in that of *McLellan* v. *Whit-*

*ney,* 15 Mass. 137.   It arose upon *St.* 1783, *c,* 57, § 2, requir-
ing the recording of the levy of an execution upon real estate
by appraisement.    This statute, it is to be remembered, had
provisions substantially similar to Rev. Sts. c. 73, § 38, now
under consideration ; both requiring the record of the levy
within three months.    It was there contended, as in the
present case, that the recording of the levy within three
months was a condition essential to the vesting of a legal title
in the creditor; but this court held otherwise, giving to this
provision, which required the recording of a levy of execu-
tion in three months, the same construction which they had
already given to *St.* 1783, *c.* 37, requiring the recording of
deeds, and holding that, as to the former as well as the latter,
the object of the registry was none other than to give notice
to a subsequent purchaser or attaching creditor, and that it
was not a prerequisite to the vesting of the title ; thus con-
struing the registry laws in the spirit of the rule declared by
the supreme court of the State of New York, in *Jackson* v.
*West,* 10 Johns. 466, that "the courts are to construe the re-
gistry act not so literally as to work injustice, but so liberally
as to prevent the mischief and advance the remedy."

If the revised statutes had merely reënacted, *in totidem
verbis,* the *Sts.* of 1783, *c.* 37 and *c.* 57, the present question
would hardly have arisen ; as those statutes contained pro-
visions equally stringent as those of § 38 of *c.* 73 of the Rev.
Sts., and as all the reasons for giving effect to an unrecorded
title, as against purchasers or attaching creditors having full
knowledge of such deed or such levy of execution, apply
quite as strongly to cases of grantees holding by purchase
under a sheriff's sale of an equity of redemption.    The only
real ground of argument for maintaining a distinction between
the cases of omission to record an ordinary deed or a levy by
appraisement, and a levy by sale of an equity of redemption,
is the fact, that in the revised statutes the legislature have, in
direct terms, made provision with regard to ordinary deeds and
levies on real estate by appraisement, that such want of record
shall not render them invalid as against a purchaser or attaching

creditor having actual knowledge of such unrecorded deed, or unrecorded levy of execution, (Rev. Sts. *c.* 59, § 28; *c.* 73, § 18;) but have omitted to make a corresponding provision as to the omission to record deeds given by the sheriff on the sale of an equity of redemption of real estate. From this circumstance it is argued, that we must apply a different rule in the latter case. To this course of reasoning I reply, in the first place, that the rule of law which gives effect to an unrecorded deed or unrecorded levy of execution, as against a purchaser or attaching creditor with notice, does not derive its force and effect from the provisions of the revised statutes above referred to. Without any such clause as is contained in these statutes, such unrecorded deeds and levies would have been equally valid as respects individuals having notice thereof. The introduction of these exceptions into the revised statutes has not, therefore, changed the law, nor given any new force and effect to unrecorded deeds or levies of execution. How it happened that these exceptions were introduced in the case of ordinary deeds and levies by appraisement, is quite apparent to my mind, and is satisfactorily accounted for by the well known fact, that in the revision of the statutes, the principle of adding to the former statute provisions a clause, confirmatory of the judicial constructions thereof, was adopted in numerous cases. As has been already stated, the court had fully recognized and adopted the doctrine, that the object of the registry act was satisfied by bringing home to the party objecting to the want of registry actual knowledge of the unrecorded deed or levy; and the legislature added to the registry act, by way of positive enactment, what had already become the law of the land by force of judicial decisions. The fact that the legislative enactment applies as well to levies of execution by appraisement of real estate as to ordinary deeds, and alike dispenses with the record in both cases where knowledge of the act exists, is a strong legislative declaration that no distinction exists, as to necessity of the registry, between the cases of ordinary conveyances by deed, and those of title by levy of execution. In both, the omis-

sion to record may be supplied by showing actual knowledge by the subsequent purchaser, or attaching creditor. This seems to remove the objection to the title under an unrecorded levy, that it is a mere statute title, and that the party relying upon it must bring himself within all the requisitions of the statute.

The application of the rule, that knowledge supplies registry, clearly extends as well to attaching creditors as to grantees by deed. The case of *McGregor* v. *Brown,* 5 Pick. 170, seemed to advance a contrary opinion as to the case of two attaching creditors. But that case will not, perhaps, be found necessarily to conflict with the view now taken, inasmuch as it does not seem to present distinctly the fact of that actual notice which is the substitute for the record. But however the rule may have been as to the right of successive attaching creditors, or whatever doubts there may have formerly been whether an omission to record a levy of execution within the time prescribed by the statute could be supplied by proof of actual notice on the part of one seeking to avoid the effect of the levy by reason of such omission to record it, the Rev. Sts. *c.* 73, § 18, have sanctioned the application of the rule, that knowledge is a substitute for the record, in reference, at least, to one class of attaching creditors, viz. those who levy on real estate by appraisement.

The case before us, of a levy by sale of an equity of redemption, would seem to be one much stronger for the application of the rule, that knowledge of the levy and sale is a substitute for recording, than that of a levy by appraisement. In the latter case, the party who is acquiring the title by the levy is necessarily the creditor himself. But the purchaser of an equity of redemption is not necessarily the creditor; he may be an entire stranger. By the levy of the execution, and sale of the equity, the debt of the creditor is discharged, and the new party, the purchaser, may have no other connexion with the attachment than what arises from his being such purchaser, and holding his title under a sheriff's deed. Of all cases arising under the registry law, that of a sheriff's deed, upon

a sale of an equity of redemption, would seem to be the last which requires a rigid construction of the registry law. Ordinary deeds are, in a good degree, private conveyances, and the transactions may be entirely unknown beyond the grantor and grantee. A levy of execution on real estate by appraisement is comparatively a private transaction; no public notice being given, and the proceeding being such as may take place remote from the public eye. But not so in the case of a sale of an equity of redemption, on execution, by an officer. Such sale cannot take place unless there shall have been a public notice, both by publishing in a newspaper, and by posting up notices in public places; and the sale is at public auction. Such, indeed, were the circumstances of publicity attending such sales, that it had come to be doubted whether any registry was necessary of the deed from the sheriff to the purchaser of the equity. It was this very doubt that furnished the leading object for this new enactment, contained in Rev. Sts. *c.* 73, § 38, requiring such deeds to be recorded in three months, and this with a view to the protection of a *bonâ fide* purchaser. It was therefore made the subject of a positive enactment. But the legislature, so far from intending to impose a more stringent or onerous duty on purchasers under such sheriff's sale, as to recording their deeds, place them upon a more liberal footing than ordinary purchasers. In considering the effect to be given to § 38, we are to look at the state of the law as it existed in reference to registration; for every legislative enactment is to be taken and construed with reference to the well known principles of the common law applicable to the subject matter. Now, it had come to be a well settled rule of law, sanctioned by a uniform current of judicial decisions, that a party, having actual knowledge of the existence of an unrecorded deed, was estopped to set up the want of registry, and that an attempt to defeat a conveyance, under such circumstances, was against good conscience, and a perversion of the great objects of the statute.

When the legislature enacted that deeds, given to the pur-

chasers of equities of redemption, should be recorded within three months, they enacted the provision to be construed and enforced upon the principle, well known and long sanctioned, that registry laws were made to protect innocent parties, and not to protect fraudulent ones; and that actual notice was equally operative as the registry, as to those affected with such notice. We see no sufficient reason why it should not be thus construed, and governed by the principles that are applicable to the registry of other deeds and other levies of executions. Such a view of the matter secures symmetry in the law of registration, placing all these various deeds and levies upon the same footing as to the necessity of complying with the registry act, and the effect that is to be given to actual knowledge, as a substitute for such record.

A different view of this matter would lead to a most incongruous state of the law, in the matter of registration. A levy of execution upon real estate by appraisement, though required to be recorded in three months, would be held good if unrecorded, when the fact of such levy was known to a subsequent purchaser or attaching creditor; while, on the other hand, a purchaser, under a levy of execution and sheriff's sale of an equity of redemption, who had omitted to record his deed, would be deprived of his estate, although he might be alike able to show actual knowledge, by the subsequent purchaser, of the existence of his deed. What possible reason can be assigned for the distinction in the two cases? They are both cases of attachments, and both equally liable to the objection that it is a race of diligence between contending creditors. And the only difference that exists is one that is favorable to cases of purchasers at a sheriff's sale, namely, that in this case the race of diligence has been run, the creditor satisfied, and a third party introduced, whose title deeds are as much in equity to be sustained against those who, with full knowledge of the title, attempt to set it aside for want of registry, as any other class of grantees.

We are satisfied that one and the same principle applies to these various titles, and that the omission to record a deed,

given to the purchaser of an equity of redemption at a sheriff's sale, will not necessarily render such conveyance invalid in law ; that as between such purchaser and one taking a deed subsequently from the debtor, or one making an original attachment or levy of execution, if such subsequent grantee or attaching creditor has actual knowledge of such unrecorded deed, it is equally operative upon him as if the same had been duly recorded.

A question similar in principle arose upon the *St.* 5 Anne, *c.* 18, § 4, which provides that no judgment shall affect or bind any lands situate in West Riding, but only from the time a memorial of such judgment shall be entered at the register office ; and it was held that the decisions under the Middlesex registry act, requiring deeds to be recorded, must apply equally to this statute, and that notice of the judgment was equivalent to the registry. *Gosling's case,* 3 Simons, 301.

The only further inquiry of a general character is, whether, when a title is set up under a second levy and sale of an equity of redemption, on an execution issued upon a judgment rendered in a suit where there had been an attachment subsisting before and at the time of the first levy and sale, the title under the first levy and deed, though not recorded within three months, may be sustained as against such second levy and sale. In the opinion of the court, it may be thus sustained, if the creditor in such second execution (he being also the purchaser of the equity of redemption) shall, at or before the time of making the sale on his execution, have actual knowledge of the prior levy and sale, and also of the further fact that the creditor in such execution, on which the first sale was made, had an attachment of such right in equity prior to that of the creditor in the second levy.

In the present case, the purchasers under the second levy are to be taken and considered as representing John Paige, the real creditor in interest in the second execution, and to whom the question of notice applies ; they being his assignees. And notice to said Paige at any time before the appointment of

13 *

the said assignees, or notice to the said assignees and purchasers at any time after their appointment and before the sale to them, will be sufficient notice to avoid the objection of want of registry.

The court are also of opinion that the facts stated by the parties are sufficient to authorize us to hold that the purchasers under the second sale had notice of the first levy and sale. But in the matter of notice of the prior attachment made by the creditor in the first levy, the facts are not so distinctly stated or admitted as to warrant us in assuming that such notice is conceded. Unless the fact on this last point is agreed by the parties, all the evidence bearing upon this point must be submitted to the jury. All facts, tending to show the agency and knowledge of Mr. Brooks acting as attorney to the second attaching creditor, are proper evidence to be submitted to the jury, to show knowledge in John Paige and his assignees, but not conclusive evidence ; and such fact being established, the first levy and sale will be held good, and judgment will, in that case, be rendered for the demandant